# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1974

_____

Olympus Insurance Company

*Plaintiff - Appellant*

v.

AON Benfield, Inc.; Benfield, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 15, 2012
Filed: April 1, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Olympus Insurance Company ("Olympus") appeals the district court's[1] dismissal of its complaint for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). Olympus argues that the district court erred in determining that its contract with

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

Benfield, Incorporated ("Benfield") clearly and unambiguously provided that Benfield did not owe Olympus an annual fee after Benfield was notified of Olympus's decision to replace Benfield with another reinsurance broker. Having conducted a de novo review of the district court's order, we affirm the dismissal of Olympus's complaint.

I.

Olympus sells homeowners insurance policies in the State of Florida. To manage the risk associated with these homeowners policies, Olympus sought to reinsure any portion of a policy above $750,000 and aggregate catastrophe loss above $6 million. Because reinsurance policies are spread among multiple reinsurers, Olympus engaged the services of Benfield as its reinsurance broker. Benfield was responsible for placing and servicing reinsurance policies for the homeowners insurance policies written by Olympus. After Benfield successfully placed a reinsurance policy, it earned a brokerage commission, which was typically 10% of the premium Olympus paid to the reinsurer. Also, as is common in the industry, Olympus and Benfield entered into a brokerage sharing agreement, under which Benfield agreed to share part of its commission in the form of an "Annual Fee" with Olympus in return for exclusive status as Olympus's reinsurance broker and the establishment of a long-term brokerage relationship.

In 2008, Olympus and Benfield entered into a one-page brokerage sharing agreement. As relevant, the contract provided in the first paragraph:

> In consideration for Client appointing Benfield as its exclusive reinsurance intermediary-broker for the placement and servicing of all of Client's reinsurance contracts (the "Subject Business") for the initial annual period beginning on June 1, 2008 and ending on May 31, 2009 (the "Initial Term") (each June 1 to May 31 may also be referred to as an "Agreement Year"), and for additional subsequent Agreement Years

(each such year a "One-Year Renewal Term") unless either party notifies the other party of its intent not to renew this Agreement at least 30 days prior to the end of the Initial Term or any subsequent One-Year Renewal Term, Benfield agrees to share with Client Benfield's received and earned brokerage revenue derived from the Subject Business excluding any brokerage paid to corresponding brokers, including any brokers affiliated with Benfield or sub-brokers ("Net Brokerage Revenue") by paying Client an annual fee ("Annual Fee") for each Agreement Year equal to 70% of all Net Brokerage Revenue less the Service Fee set forth in Paragraph 2 of this Agreement.

(Appellant's Addendum at 18.) Also relevant to this case is the third paragraph of the contract, which provided:

No Annual Fee shall be payable subsequent to any decision by Client to terminate or replace Benfield as its reinsurance intermediary-broker for any portion of the Subject Business. In addition, in the event Benfield is terminated as Client's reinsurance intermediary-broker for any Subject Business prior to the end of the Initial Term, Client shall promptly pay Benfield any outstanding amount of the Service Fee for the current Agreement Year and shall reimburse Benfield for Annual Fees previously paid by Benfield under this Agreement. Client agrees to reimburse Benfield for any and all costs and expenses associated with collecting any reimbursement.

(Appellant's Addendum at 18.)

In February 2009, Olympus decided to replace Benfield as its reinsurance broker with Guy Carpenter & Company ("Guy Carpenter"). On March 25, 2009, Guy Carpenter informed Benfield by letter that it would replace Benfield as Olympus's reinsurance broker effective June 1, 2009. The parties agree that this letter served as proper notice of termination. In October 2009, Olympus demanded payment of the Annual Fee due for the Initial Period. Benfield refused to make the payment, arguing that its replacement by Guy Carpenter constituted a decision to "terminate or replace"

as contemplated by the third paragraph of the agreement, and thus that Benfield was not obligated to pay the Annual Fee.

Olympus brought the instant action in state court under theories of breach of contract, quasi-contract, unjust enrichment, and quantum meruit and requested relief of $611,854, the amount Olympus contends it is owed in Annual Fees. After removal to federal court on the basis of diversity, Benfield moved for dismissal of the complaint, arguing the unambiguous terms of the contract provide that Benfield does not owe Olympus the Annual Fee and the existence of a contract forecloses Olympus's claims of quasi-contract, unjust enrichment, and quantum meruit.

After a hearing, the district court entered an order granting Benfield's motion to dismiss. Applying Minnesota law, the district court concluded the unambiguous language of the contract relieved Benfield of any obligation to pay Olympus the Annual Fee because the forfeiture provision of the third paragraph was activated when Benfield was informed of Olympus's decision not to renew the brokerage agreement. The court also determined that the remaining claims—quasi-contract, unjust enrichment, and quantum meruit—could not succeed because Olympus and Benfield were parties to an express contract.

Olympus appeals the dismissal of its complaint. We have jurisdiction under 28 U.S.C. § 1291.

II.

In this appeal, Olympus raises four claims of error: (1) the district court improperly limited the definition of "Subject Business" to only those words preceding the parenthetical term and excluding the modification clauses following the parenthetical term; (2) the district court incorrectly construed a non-renewal to have the same meaning as a "replacement" or a "termination" under the contract; (3) the

district court's interpretation of the contract—that Benfield is only obligated to pay the annual fee if Olympus renews the broker agreement for an additional term—creates a condition subsequent that is not contained in the contract; and (4) because the contract is ambiguous, theories of equity—specifically unjust enrichment and quantum meruit—are available to Olympus.

Our review of the district court's grant of a motion to dismiss under Rule 12(b)(6) is de novo. Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 668 (8th Cir. 2012). This agreement contains a choice-of-law clause dictating that Minnesota law will govern the contract. The parties agree that Minnesota law applies to the contract. We review de novo the district court's application and interpretation of Minnesota law. Id.

When interpreting a contract, the court's primary goal "is to ascertain and enforce the intent of the parties." Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 364 (Minn. 2009). If the contract is memorialized in a written instrument, the written contract serves as the best evidence of the parties' intent, and the court determines that intent "from the plain language of the instrument itself." Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004). We give contract language its plain and ordinary meaning, reading it in the context of the instrument as a whole and viewing each part of the contract in light of the others. Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998).

Olympus argues that the district court erred by dismissing its complaint because the brokerage contract is ambiguous, specifically as to the definition of "Subject Business" and whether "terminate or replace" has the same meaning as "intent not to renew." Contract language is ambiguous if it is "reasonably susceptible to more than one interpretation." Brookfield Trade Ctr., 584 N.W.2d at 394. "Whether a contract is ambiguous is a question of law . . . ." Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 45 (Minn. 2008). If the court determines that a contract is

ambiguous, its interpretation then becomes a question of fact for the jury and the district court should not grant a motion to dismiss. See Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346 (Minn. 2003).

Applying these principles, we address first Olympus's contention that the definition of "Subject Business" is open to more than one reasonable interpretation and thus is ambiguous. The district court limited the definition of "Subject Business" to those words preceding the parenthetical reference, that being "the placement and servicing of all of Client's reinsurance contracts." Olympus contends that the definition of "Subject Business" must also encompass the language following the integrated parenthetical, that being the time limits of the initial and renewal terms. Olympus argues that if its definition of "Subject Business" is adopted, "reinsurance contracts for years after the non-renewal never became part of Subject Business nor became subject to the terms of the Contract. Thus the forfeiture language [in the third paragraph] could never apply to Olympus' reinsurance contracts entered into after non-renewal."

Benfield argues that the "Subject Business" means all of Olympus's reinsurance placements, not just those made in the current year. This is so because in drafting the contract, the parties utilized the integrated definition convention and placed "Subject Business" directly after "the placement and servicing of all of Client's reinsurance contracts." Further, Benfield claims it entered into a brokerage sharing agreement because Benfield had an interest in establishing a long-term relationship with Olympus and, without the possibility of a long-term relationship, there would be no justification for paying part of its commission to Olympus.

We agree with the district court's sound reasoning that the proper reading of this contract is to define "Subject Business" as the placement and servicing of all of Olympus's reinsurance contracts. Olympus's argued definition—that "Subject Business" refers to all of Olympus's reinsurance contracts unless it elects not to

renew—is not plausible.  Through the use of the integrated definition, the parties demonstrated their intention to define "Subject Business" to mean "all of [Olympus's] reinsurance contracts" without a term limitation.  See Kenneth A. Adams, A Manual of Style for Contract Drafting § 5.34 (2d ed. 2008) ("[A]n integrated definition constitutes part of the substantive provisions of a contract, and the defined term is defined by tucking it at the end of the definition, in parentheses.").  Accordingly, this part of the contract is not subject to more than one reasonable interpretation and therefore is not ambiguous.

Next, Olympus argues that even if the "Subject Business" definition unambiguously includes the placement and servicing of contracts beyond the Initial Term, the district court erred when it held the terms "terminate," "replace," and "non-renew" to have the same meaning.  Olympus argues that it did not "terminate" or "replace" Benfield and therefore the forfeiture provision does not apply.  Olympus claims that in selecting Guy Carpenter to begin placing and servicing its reinsurance contracts in June 2009, it was electing not to renew Benfield and that this election is not the same as "terminat[ing]" or "replac[ing]" Benfield.

Under the forfeiture provision, Benfield is relieved of its obligation to pay the Annual Fee "subsequent to any decision by [Olympus] to terminate or replace Benfield as its reinsurance intermediary-broker for any portion of the Subject Business." Olympus points out that the contract uses the phrase "intent not to renew" in the first paragraph, but then uses the terms "terminate" and "replace" in the forfeiture paragraph.  Olympus argues the parties must have intended different meanings because they employed different terms.  Specifically, Olympus claims the terms "terminate" or "replace" refer to a decision made *during* either the Initial Term or a Renewal Term, whereas "non-renewal" pertains only to a decision to use a different broker at the *completion* of the Initial Term or a Renewal Term.

-7-

Again, we find ourselves in agreement with the district court, which determined that "intent not to renew" encompasses both termination and replacement. As the district court pointed out, Olympus would have no reason to replace or terminate Benfield prior to the end of the Initial Term or Renewal Term because Benfield earned its commission upon the placement of the reinsurance and received no other benefit from servicing the reinsurance policies through the end of the term. It is clear that the parties added the forfeiture provision to the contract to encourage Olympus to maintain a long-term relationship with Benfield. When Guy Carpenter informed Benfield that it would be taking over as Olympus's reinsurance broker, this activated the forfeiture provision of the contract and released Benfield from the obligation to pay the Annual Fee to Olympus, regardless of whether it is viewed as a termination, replacement, or intent not to renew. As this is the only reasonable interpretation of the contract, no ambiguity exists.[2]

Finally, because we find the contract to be clear and unambiguous, Olympus's claims for equitable relief must be rejected. Under Minnesota law, "'equitable relief cannot be granted where the rights of the parties are governed by a valid contract.'" M.M. Silta, Inc. v. Cleveland Cliffs, Inc., 616 F.3d 872, 880 (8th Cir. 2010) (quoting U.S. Fire Ins. Co. v. Minn. State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981)).

### III.

Accordingly, we affirm the district court's dismissal of Olympus's complaint for failure to state a claim.

_____

---

[2]We similarly reject, for the reasons explained, the argument that this provision created a condition subsequent in the contract.