[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11148
Non-Argument Calendar

_____

D.C. Docket No. 4:17-cv-00125-HLM

GEORGIA POWER COMPANY,

Plaintiff - Appellee,

versus

ABB, INC.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 23, 2020)

Before WILLIAM PRYOR, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Georgia Power Company ("Georgia Power") brought a third-party complaint against ABB, Inc. ("ABB") seeking indemnification and alleging a breach of contract for ABB's failure to make Georgia Power an additional insured on ABB's liability insurance policy. The District Court granted summary judgment to Georgia Power on all claims. On appeal, ABB argues that summary judgment on Georgia Power's indemnification claims was not warranted because ABB's contract with Georgia Power was ambiguous as to whether ABB had to indemnify Georgia Power for its own negligence. ABB also argues that Georgia Power was not entitled to summary judgment on its breach of contract claim because it did not show independent damages. After careful consideration, we affirm.

## I.

Since at least 2000, ABB has provided equipment and services in support of the automatic control systems at Georgia Power's power generation facilities. In 2015, one of ABB's senior field technicians, David Garrison, was severely injured while performing electrical work at Plant Bowen, a power plant owned and operated by Georgia Power. Garrison and his wife brought personal injury claims against Georgia Power, alleging that Georgia Power had negligently operated Plant Bowen. Georgia Power in turn sought indemnification from ABB for the Garrisons' lawsuit. Citing the indemnification provision in its contract with Georgia Power, ABB responded that it was not required to provide indemnification

2

for liability arising from Georgia Power's own negligence. That indemnification provision says ABB must indemnify Georgia Power for all losses and liability, "except to the extent caused by Company's negligence." The dispute over indemnification thus turns on whether "Company" refers to Georgia Power.

## A. The Contract

The relationship between ABB and Georgia Power is governed by a series of agreements between ABB and Southern Company Services, Inc. ("SCS"). SCS is a subsidiary of Southern Company that provides certain services to Southern Company and its operating divisions, including Georgia Power. ABB and SCS entered a Master Agreement for Services (the "Master Agreement") in 2007, and Amendment One to the Master Agreement ("Amendment One") in 2013. The Master Agreement and Amendment One (together, "Contract") set forth the terms by which Georgia Power and other SCS-affiliated entities purchase equipment and services from ABB.

## B. The Indemnification Provisions

Both the Master Agreement and Amendment One contain indemnification clauses, but these clauses differ in material respects. Under the Master Agreement's indemnification clause, ABB agrees to fully indemnify "Persons Indemnified" for all covered claims except those "result[ing] from the sole

3

negligence, fraud or intentional wrongdoing of a Person Indemnified."  The Master Agreement's definition of "Persons Indemnified" includes Georgia Power.

In Amendment One, ABB again agreed to indemnify "Persons Indemnified," which continues to refer to Georgia Power.  However, the indemnification provision in Amendment One provides that, upon determination that "Company" was negligent, "Company" would be responsible for a pro rata share of its own negligence:

> **General Indemnification.** To the fullest extent permitted by applicable law, Contractor will indemnify, defend and hold harmless the Persons Indemnified from and against any and all loss, damage, costs . . . , or liability, except to the extent caused by Company's negligence . . . . Contractor shall assume the defense of any claim subject to this Indemnity and defend it until such time there is a determination of negligence by the Company, either by court, arbitrator, or agreement, and at which time liability for the fault shall be shared on a pro rata basis to the extent of the Company's negligence.[1]

Both parties agree that the indemnification clause in Amendment One, and not the indemnification provision in the Master Agreement, governs this dispute.

## C.  The Contract's Definition of "Company" and "Affiliate"

The Master Agreement defines both "Company" and "Affiliate" in its preamble paragraph:

> This Agreement is entered by **Southern Company Services, Inc.**, an Alabama corporation with its principal office at 600 North Eighteenth Street, Birmingham, Alabama 35203 (acting for itself and as agent for

---

[1] While the parties dispute the meaning of "Company" in the Contract, they agree that "Contractor" refers to ABB.

Alabama Power Company, Georgia Power Company ("**GPC**"), Gulf Power Company and Mississippi Power Company (individually, "Affiliate" and collectively "Affiliates") as may be applicable under the circumstances), ("**Company**") and **ABB, Inc.**, a Delaware corporation with its principal office at 501 Merritt Parkway, Norwalk, Connecticut ("**Contractor**").

Meanwhile, Amendment One defines "Company" in its title, which reads:

"AMENDMENT NO. ONE (1) to Master Agreement for Services between

Southern Company Services, Inc. ('Company') and ABB Inc. ('Contractor')

Agreement No. 8981 ('Agreement')."

Paragraph 1.3 of the Master Agreement explains the relationship between

"Company" and its "Affiliates":

> The Parties agree that Company is entering into this Agreement not only for its own benefit, but also and equally for the direct benefit of its parent, Southern Company, and Affiliates, both present and future. All rights, benefits, discounts, remedies and warranties accruing to Company in this Agreement will likewise accrue to the Affiliates, including the right to enforce this Agreement in their respective names.

The same provision says that Affiliates could make purchase orders to ABB under

the Master Agreement, but that for any such order, "[e]ach Affiliate [would] be

solely responsible for its own transactions, including payment obligations."

## D. District Court Proceedings

After ABB refused to fully indemnify Georgia Power—including for

liability arising out of Georgia Power's own negligence—Georgia Power brought a

third-party complaint against ABB. The complaint made claims for

5

indemnification; breach of contract with respect to ABB's failure to indemnify; and attorney's fees and costs for enforcing the Contract's indemnification provision (collectively, "Indemnification Claims"). Separately, the complaint alleged a breach of contract with respect to ABB's failure to add Georgia Power to its liability insurance ("Insurance Claim"). Georgia Power sought summary judgment on all claims.

The district court granted summary judgment to Georgia Power on its Indemnification Claims after concluding the Contract unambiguously defined "Company" as referring only to SCS, and not Georgia Power. The district court based this conclusion primarily on the fact that "Company" was defined as SCS in the introductory paragraph of the Master Agreement. It also held that even if the term "Company" were ambiguous, it would resolve that ambiguity in favor of Georgia Power because holding otherwise would render certain terms in the contract meaningless. Finally, the district court granted Georgia Power summary judgment on its Insurance Claim because (a) ABB did not contest that part of Georgia Power's summary judgment motion; and (b) the undisputed facts showed that ABB breached its contractual duty to provide Georgia Power with insurance in connection with the Garrisons' claims.[2] This appeal followed.

---

[2] The district court also held (1) based on the undisputed facts, ABB or a member of its personnel had been negligent, thus triggering ABB's obligation to indemnify under the Contract; and (2) the language of the indemnification clause was sufficiently explicit, under Georgia law,

## II.

We review <u>de novo</u> a district court's grant of summary judgment.  <u>Mangieri v. DCH Healthcare Auth.</u>, 304 F.3d 1072, 1075 (11th Cir. 2002).  "The interpretation of a contract is a question of law that the court reviews <u>de novo</u>."  <u>Daewoo Motor Am., Inc., v. Gen. Motors Corp.</u>, 459 F.3d 1249, 1256 (11th Cir. 2006).  Whether a contract is ambiguous, and whether that ambiguity can be resolved without submission to a jury, is also a question of law reviewed <u>de novo</u>.  See <u>Underwriters at Lloyd Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea, Ltd.</u>, 882 F.3d 1033, 1039 (11th Cir. 2018).

## III.

On appeal, ABB raises two arguments.  First, it challenges the district court's determination that "Company" in the Contract refers only to Southern Company Services.  Second, it argues that Georgia Power was not entitled to summary judgment on its insurance claim because Georgia Power provided no evidence of "independent damages."  We address each argument in turn.

### A.  The Indemnification Claims

---

so as to indemnify Georgia Power for its own negligence.  ABB does not challenge these aspects of the summary judgment order, and we do not address them on appeal.

7

Under Georgia law,[3] courts interpret contracts in three steps.  First, we determine whether the contract language is unambiguous.  City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d 381, 389 (2013).  If it is, we enforce the contract according to its plain terms.  Id.  If the contract is ambiguous, we must apply Georgia's rules of contract construction to resolve the ambiguity.  Id.  And if ambiguity remains after applying the rules of construction, "the issue of what the ambiguous language means and what the parties intended must be resolved by a jury."  Id.

A contract is ambiguous when "the words used in the contract leave the intent of the parties in question—i.e., that intent is uncertain, unclear, or is open to various interpretations."  Grange Mut. Cas. Co. v. Woodard, 861 F.3d 1224, 1231 (11th Cir. 2017) (quoting Capital Color Printing, Inc. v. Ahern, 661 S.E.2d 578, 583 (Ga. Ct. App. 2008)).  Georgia courts have defined ambiguity as "duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument."  First Acceptance Ins. Co. of Ga., Inc. v. Hughes, 826 S.E.2d 71, 75–76 (Ga. 2019) (quotation marks omitted).  On the other hand, "no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable

---

[3] The parties agreed that the Contract would be governed by Georgia law.

8

interpretation." Grange, 861 F.3d at 1231 (quoting Capital Color Printing, 661 S.E.2d at 583).

> 1. The Contract Unambiguously Defines "Company" as Southern Company Services.

The Contract defines "Company" in two different provisions. First, the Master Agreement's preamble states, "This agreement is entered by **Southern Company Services, Inc.**, . . . (acting for itself and as agent for Alabama Power Company, Georgia Power Company [], Gulf Power Company and Mississippi Power Company (Individually, 'Affiliate' and collectively, 'Affiliates') . . . ) (**'Company'**) and **ABB Inc.**, . . . ('Contractor')." And second, Amendment One states in its title that it is amending the Master Agreement "between Southern Company Services, Inc. ('Company') and ABB Inc. ('Contractor')."

Both the preamble to the Master Agreement and the title of Amendment One thus indicate that "Company" is a defined term that refers to Southern Company Services. See HIP, Inc. v. Hormel Foods Corp., 888 F.3d 334, 339 (8th Cir. 2018) (recognizing the principle that a "defined term is defined by tucking it at the end of the definition, in parentheses" (quotation marks omitted)); Bryan A. Garner, The Elements of Legal Style § 4.5, at 81 (2d ed. 2002) (describing parentheses with quotation marks inside as sufficient to signal a defined term). Meanwhile, the preamble provides that Georgia Power is an "Affiliate," rather than the

9

"Company." See Olympus Ins. Co. v. AON Benfield, Inc., 711 F.3d 894, 898 (8th Cir. 2013) (holding that a parenthetical term defines the term preceding it).

ABB argues the preamble's definition of "Company" is difficult to decipher due to its use of nested parentheticals, and that this difficulty itself raises a factual ambiguity as to whether the term "Company" includes Georgia Power. But Georgia courts have held time and again that "[a] contract is not ambiguous even though difficult to construe." F & F Copiers, Inc. v. Kroger Co., 391 S.E.2d 711, 713 (Ga. Ct. App. 1990) (quotation marks omitted). And while the preamble was not artfully written, the term "Company" indisputably refers to SCS and not Georgia Power. Beyond that, the title to Amendment One clears up any potential confusion by plainly associating "Company" with its directly adjacent term, "Southern Company Services, Inc." We therefore disagree with ABB that the Master Agreement's preamble renders "Company" ambiguous.

2. ABB Waived its Argument that the Contract's "Broad" and "Narrow" Uses of "Company" Rendered that Term Ambiguous.

ABB also argues that the term "Company" is ambiguous because the Contract sometimes uses a "broad" definition of "Company" that refers to both SCS and Affiliates such as Georgia Power, as well as a "narrow" definition that applies only to SCS. The parties disagree on whether ABB waived this argument by failing to raise it in the district court. We hold that ABB did not make this argument in the district court, and that we need not consider it on appeal. And

10

even if we were to consider this new argument, we reject the idea that the contract employs a "broad" definition of "Company" that must refer to both SCS and Georgia Power.

To start, at no point in ABB's summary judgment briefing did it argue that the Contract was ambiguous by virtue of its varying broad and narrow usages of the term "Company." Rather, ABB argued (1) that the Contract "specifically" defines Company as both SCS and Georgia Power; and (2) that the definition of Company includes Georgia Power because SCS entered the Contract acting as Georgia Power's agent. And while ABB contended that any potential ambiguity would have to be resolved against Georgia Power, ABB did not specifically argue that the Contract is ambiguous, let alone that the Contract's inconsistent deployment of "Company" is the reason for that ambiguity. See Trade Am Int'l, Inc. v. Cincinnati Ins. Co., 504 F. App'x 860, 861 (11th Cir. 2013) (per curiam) (unpublished) (refusing to consider an issue on appeal because the "specific" argument was not raised below).

"As a general rule, an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." See Blue Martini Kendall, LLC v. Miami Dade County, 816 F.3d 1343, 1349 (11th Cir. 2016) (quotation marks omitted). However, this rule is discretionary in nature, and our Circuit has established specific exceptions for where courts may consider

11

arguments not raised below.  Id.  One such exception is when the issue "involves a pure question of law, and [] refusal to consider it would result in a miscarriage of justice."  Id. at 1350 (quotation marks omitted).  This court has previously held that a refusal to consider an issue would result in a miscarriage of justice where the issue involves a constitutional issue, or an "issue of general impact."  Id.; see In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1301 (11th Cir. 2003) (holding that a refusal to consider an issue would result in a miscarriage of justice where the issue was of "transcending public importance").  We are more willing to consider an issue not previously raised on an appeal from summary judgment.  See Blue Martini, 816 F.3d at 1349.

ABB's new argument fails to satisfy any of the exceptions to the general rule prohibiting consideration of issues raised for the first time on appeal.  While it is true that ABB's new argument raises a pure question of law, our refusal to consider it is far from what we have traditionally deemed a "miscarriage of justice." Compare Blue Martini, 816 F.3d at 1350 (holding that "application of an unconstitutional statute" would result in a miscarriage of justice), with Cita Tr. Co. AG v. Fifth Third Bank, 879 F.3d 1151, 1156 (11th Cir. 2018) ("[W]e can discern no miscarriage of justice in enforcing the express terms of a contract . . . between two sophisticated parties."); OMV Assocs. Ltd. P'ship v. TriMont Real Estate Advisors, 484 F. App'x 299, 306 (11th Cir. 2012) (per curiam) (unpublished) ("A

12

litigant's inability to inject a new ambiguity into a contract . . . will rarely be a miscarriage of justice . . . ."). And although it is true that we are more willing to consider unpreserved arguments on an appeal from summary judgment, that fact alone is not a permissible basis for exercising our discretion. See Blue Martini, 816 F.3d at 1350. We therefore hold that ABB waived its argument that Contract used the term "Company" inconsistently.

Even if we were to consider ABB's new argument, it lacks merit. ABB says that the Contract varies between using "broad" and "narrow" definitions of "Company." The narrow definition is used when the Contract expressly differentiates between "Company" and "Affiliate," such as when the two terms are used in the same sentence or paragraph. And the "broad" definition is used, according to ABB, when the Contract describes the terms of ABB's products and services. Those provisions, for the most part, refer only to "Company," rather than the "Affiliate." For instance, the Contract says ABB will provide warranties for its services to "Company," but does not include any similar provision for Affiliates. Similarly, the Contract says "Company" will pay for purchase orders to ABB. According to ABB, a definition of "Company" that excludes Georgia Power would render these provisions nonsensical because, for example, only SCS would receive warranties for work that ABB provides to Georgia Power. Similarly, SCS, and not

13

Georgia Power, would have to pay for products and Services ABB provides to Georgia Power.

But ABB's argument overlooks Paragraph 1.3 of the Agreement. That provision says that any "rights, benefits, discounts, remedies and warranties accruing to Company . . . likewise accrue to the Affiliates," and that "[e]ach Affiliate will be solely responsible for its own transactions, including payment obligations." Paragraph 1.3 thus makes clear that any rights and warranties associated with ABB's work extend from "Company" to "Affiliates" such as Georgia Power. A definition of "Company" that refers only to SCS would not, therefore, preclude Affiliates such as Georgia Power from receiving warranties for work provided by ABB. Similarly, because Paragraph 1.3 says Affiliates are solely responsible for their payment obligations, a definition of "Company" that is limited to SCS would not make SCS responsible for paying off Georgia Power's purchase orders. In light of Paragraph 1.3, we reject ABB's argument that the Contract used "Company" to refer to both SCS and its Affiliates.

Because we have determined that the express language of the Contract unambiguously defines "Company" as SCS, we need not resort to Georgia's rules of contract construction. Calhoun, GA NG, LLC v. Century Bank of Ga., 740 S.E.2d 210, 212 (Ga. Ct. App. 2013) ("[W]here the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties."

14

(quotation marks omitted)).  We therefore affirm the district court's grant of summary judgment on Georgia Power's Indemnification Claims.

## B.  The Insurance Claim

ABB argues that the district court erred when it granted Georgia Power summary judgment on its Insurance Claim.  That claim alleged ABB breached its obligation, under the Contract's insurance provision, to list Georgia Power "as [an] additional insured[] under" ABB's liability insurance policies.  The Contract's insurance clause also says ABB's insurance obligation is "consistent with [ABB's] indemnification obligations."  ABB argues on appeal that because its insurance obligation was coextensive with its indemnification obligation, the damages Georgia Power seeks under its Insurance Claim are the same as those sought under its Indemnification Claims.  According to ABB, Georgia Power is not entitled to summary judgment on its Insurance Claim because it did not show damages "independent" from the those associated with its Indemnification Claims.

As an initial matter, ABB did not raise this argument in the district court, and in fact did not respond at all to the part of Georgia Power's summary judgment motion addressing its Insurance Claim.  ABB does not contend that this argument fits into any of the exceptions to our rule prohibiting consideration of arguments raised for the first time on appeal.  See Blue Martini, 816 F.3d at 1349–50.

15

Therefore, we hold that ABB waived its argument concerning Georgia Power's Insurance Claim.

Even if we were to consider ABB's argument, we would reject it because it is based on the fallacy that a breach of contract claim must allege damages "independent" from all other claims. While it is true that Georgia law prohibits "double recovery of the same damages for the same wrong," Marvin Nix Dev. Co. v. United Cmty. Bank, 692 S.E.2d 23, 25 (Ga. Ct. App. 2010) (quotation marks omitted), parties are allowed to proceed on different theories in pursuit of the same damages, Pope v. Prof'l Funding Corp., 472 S.E.2d 116, 119 (Ga. Ct. App. 1996). The cases cited by ABB, such as Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126 (11th Cir. 2014), do not hold to the contrary. Rather, they stand only for the unremarkable proposition that damages are a required element of any breach of contract claim. Id. at 1130.[4]

## IV.

We **AFFIRM** the district court's order granting summary judgment to Georgia Power on all its claims.

---

[4] Because we affirm the district court's grant of summary judgment on Georgia Power's Indemnification Claims, we do not address ABB's separate argument that a reversal as to Georgia Power's Indemnification Claims would require reversal on Georgia Power's Insurance Claim.