[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13722
_____

D.C. Docket No. 1:12-cv-23534-PAS

BLUE MARTINI KENDALL, LLC,
BLUE MARTINI KENDALL, INC.,

Defendants -
Cross Defendants -
Cross Claimants -
Appellants,

versus

MIAMI DADE COUNTY FLORDIA,
a Florida Chartered County,

Defendant -
Cross Claimant -
Cross Defendant -
Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 17, 2016)

Before MARCUS, JILL PRYOR and FAY, Circuit Judges.

MARCUS, Circuit Judge:

This case arises from the actions of two off-regular-duty Miami-Dade Police Department officers who were moonlighting by providing "police services" to Blue Martini Kendall ("Blue Martini"), a local bar and nightclub.  The officers got into an altercation with Gustavo and Elsa Martinez outside the bar and arrested them, only to be sued in federal court along with Miami-Dade County and Blue Martini.  Although the Martinezes' claims have been settled or resolved, Blue Martini has appealed the district court's order granting summary judgment to the County on the County's indemnification claim against Blue Martini.  The district court concluded that Fla. Stat. § 30.2905 -- which makes a private employer "responsible for the acts or omissions of the deputy sheriff while performing services for that employer while off duty" -- imposed a strict-liability indemnity obligation on Blue Martini.

Blue Martini appeals from that indemnification ruling, now claiming for the first time that the Florida statute wrongfully deprived it of property in violation of the 14th Amendment's due process clause.  Blue Martini suggests that it cannot be lawfully required to bear the financial burden of liability sustained on account of actions that the County's police officers were legally obliged to perform.  Notwithstanding having failed to raise the constitutional question in the district

2

court, Blue Martini argues that this Court should exercise its discretion to hear the constitutional challenge because it raises a pure question of law, is likely to arise regularly in Miami-Dade County, and raises an issue of great public concern. Because we are satisfied that the constitutional question raised is purely a legal one, and an easy one at that, and because the matter is likely to arise again, we exercise our discretion to entertain the claim.

After thorough review, we hold that Fla. Stat. § 30.2905 reasonably serves a variety of legitimate governmental interests, easily passes rational basis scrutiny, and, therefore, does not violate the due process clause. Accordingly, we affirm.

## I.

The underlying claim in this case arises from events occurring in the breezeway outside the Blue Martini nightclub on the night of October 2, 2010. As they were leaving the nightclub, plaintiffs Gustavo and Elsa Martinez, who are siblings, argued over who would drive home. At one point during the altercation, Gustavo made physical contact with Elsa, which may have been an attempt to take the keys from her. Off-duty Miami-Dade Police Officers Orlando Fleites and Jose Huerta -- who had been hired by the nightclub to provide police services that night -- intervened. According to the complaint, Huerta began shouting profanities at Gustavo until Fleites "hurled himself into the air" and tackled Gustavo. Huerta and Fleites then allegedly restrained Gustavo face-down on the ground and

3

punched him in the head.  When Elsa sought to intervene on behalf of her brother, Officer Huerta grabbed her by the throat and slammed her onto a nearby bench.

The police officers were working that night in accordance with the Miami-Dade Police Department's off-regular-duty police service permit program.  The program allows private parties to pay for off-duty police services at their business locations.  In this case, Blue Martini contracted for off-regular-duty officers (one a sergeant and the other a regular officer) to provide "police services" in the "breeze way area" near the nightclub from 10 p.m. until 4 a.m.  The officers who volunteer for the detail are paid by the Department (which collects the money from the private party) and act with the same authority and discretion they possess when they are on duty.  Indeed, there is no difference in this regard between on-duty and off-duty officers.  The officers work as police officers who take their orders from a Department official (not the private party), perform police services just as they would during the normal course of business, and make arrests (as needed) on behalf of the Department.  The difference is that the officers' beat for the shift has been determined and paid for by a private party.  The permit application that private employers must fill out to participate in the program makes clear that "notwithstanding the fact that the permit holder will reimburse Miami-Dade County for the services rendered, the police personnel remain employees of the Miami-Dade Police Department.  The [private employer] is restricted to the

4

general assignment of duties to be performed and has no authority over the police personnel." The application also provides that "an officer taking police action outside the purview of the permit, or off the permit holder's premises, will revert to an on-duty status."

On September 28, 2012, the Martinezes commenced this action against Miami-Dade County, then-Police Director James Loftus, Officer Huerta, Officer Fleites, and Blue Martini in the United States District Court for the Southern District of Florida. The complaint alleged fifteen counts, including false arrest, battery, and claims arising under 42 U.S.C. § 1983, against the municipal defendants, as well as vicarious liability and negligence claims against Blue Martini. The complaint was followed by a series of cross-claims and cross-motions for summary judgment. Most significantly for our present purposes, Miami-Dade County filed a cross-claim for indemnity against Blue Martini, arguing that "[t]he County is not responsible for the acts of Officers Huerta and Fleites because Florida Statutes Section 30.2905 provides that the party contracting for the officers' off-regular-duty services is responsible for the officers' acts or omissions." The cross-claim asserted that the officers were providing security services for Blue Martini pursuant to § 30.2905 and thus were acting as agents of Blue Martini, making Blue Martini vicariously responsible for any wrongdoing by the officers. Section 30.2905 provides in relevant part that:

5

> (1) A sheriff may operate or administer a program to contract for the employment of sheriff's deputies, during off-duty hours, for public or private security services.
>
> (2)(a) Any such public or private employer of a deputy sheriff shall be responsible for the acts or omissions of the deputy sheriff while performing services for that employer while off duty, including workers' compensation benefits.

Fla. Stat. § 30.2905.

Blue Martini moved to dismiss the cross-claim, arguing that the statute does not require indemnification and, even if it did, it would not apply to the facts of the case. The district court denied the motion to dismiss the indemnification claim, reasoning that the clear intent of the statute was to require indemnification and highlighting that Blue Martini had not offered a plausible alternative reading of the statute.

As the litigation progressed, Blue Martini and the County cross-moved for summary judgment against one another. In these motions, the parties disputed whether § 30.2905 imposed strict liability on private parties who contracted for off-duty police services. Despite this dispute, Blue Martini never argued in the district court that the statute was unconstitutional. During the pendency of these motions, the County and its officers settled with Gustavo and Elsa Martinez for $25,000, leaving only the Martinez siblings' claims against Blue Martini, and the County and Blue Martini's cross-claims against one another.

On July 15, 2014 the district court granted the County's motion to dismiss Blue Martini's cross-claim on sovereign immunity grounds. Then, on July 21, 2014, the trial court issued an omnibus order disposing of the remaining motions and claims. The court ruled that Blue Martini could not be held vicariously liable to the Martinez siblings for the police officers' actions because the officers were essentially working for Blue Martini as independent contractors and, under Florida law, employers can only be held vicariously liable for the acts of their employees and agents. Likewise, the court granted summary judgment for Blue Martini on the negligence claims because there was no evidence that it had any supervisory authority over the police officers. But the district court entered summary judgment in favor of the County on the indemnification claim, concluding that the statutory "phrase 'shall be responsible for the acts or omissions' includes an obligation of indemnification for acts or omissions taken by the officers while providing off-duty services to Blue Martini." In as much as it was undisputed that the officers' actions occurred in the breezeway area they had been contracted to patrol, the trial court held that § 30.2905 entitled the County to summary judgment. Thus, Blue Martini was responsible for indemnifying the County for the settlement amount with the Martinez siblings and for reasonable attorney's fees -- a total of $35,575.

Blue Martini filed this timely appeal, raising only one issue -- that § 30.2905 is unconstitutional and, thus, the district court's judgment should be reversed.

7

Notably, Blue Martini does not argue that the district judge erroneously construed the statute or, indeed, that she committed any error at all apart from applying an allegedly unconstitutional statute.

## II.

Since the County has argued in its brief that Blue Martini lacks standing to challenge the constitutionality of § 30.2905, we are obliged to first consider whether the claim is justiciable. Standing "is an essential and unchanging part" of Article III's case-or-controversy requirement for federal court jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). It is by now axiomatic that in order to establish standing, a plaintiff must show that (1) it suffered an actual injury that is concrete and particularized, not conjectural or hypothetical; (2) the injury was caused by the challenged conduct; and (3) there is a likelihood the injury could be redressed by a favorable decision. Id. at 560–61.

As we see it, there is little question that Blue Martini has standing. First, if we accept the district court's interpretation of § 30.2905 (and there is no dispute about this), Blue Martini will be required to indemnify the County in the amount of $35,575. This is an actual and concrete injury. Moreover, the required payment is compelled by § 30.2905. This undoubtedly establishes a causal connection between the challenged statute and the claimed injury. Finally, a ruling by this Court that the statute is unconstitutional would eliminate the foundation for the

district judge's ruling and relieve Blue Martini of any obligation to indemnify the County.  Blue Martini's injury would be redressed by a favorable decision.  The bulk of the County's arguments to the contrary are based on an apparent misapprehension about the basis of Blue Martini's claim.  Indeed, at oral argument, the County conceded that Blue Martini has standing to challenge § 30.2905.

## III.

The second preliminary question is whether to hear Blue Martini's constitutional challenge to § 30.2905.  As a general rule, an issue "not raised in the district court and raised for the first time in an appeal will not be considered by this court."  Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotations omitted) (collecting cases); see also Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360 (11th Cir. 1984) ("Except for questions concerning the power of the court to order relief, an appellate court generally will not consider a legal issue or theory unless it was presented to the trial court.").  This general rule preserves judicial resources and hews to the "essential nature, purpose, and competence of an appellate court."  Access Now, 385 F.3d at 1331.  "This rule, however, is not jurisdictional and may be waived by this court in certain exceptional circumstances."  United States v. Godoy, 821 F.2d 1498, 1504 (11th Cir. 1987).  The question of whether to hear a claim not raised in the district court is ultimately one that falls within the sound discretion of the

9

Court.  Narey v. Dean, 32 F.3d 1521, 1527 (11th Cir. 1994) (citing United States v.

S. Fabricating Co., 764 F.2d 780, 781 (11th Cir. 1985)).

We have identified five situations in which it may be appropriate to deviate

from the standard rule of practice:

> First, an appellate court will consider an issue not raised
> in the district court if it involves a pure question of law,
> and if refusal to consider it would result in a miscarriage
> of justice.  Second, the rule may be relaxed where the
> appellant raises an objection to an order which he had no
> opportunity to raise at the district court level.  Third, the
> rule does not bar consideration by the appellate court in
> the first instance where the interest of substantial justice
> is at stake.  Fourth, a federal appellate court is justified in
> resolving an issue not passed on below where the proper
> resolution is beyond any doubt.  Finally, it may be
> appropriate to consider an issue first raised on appeal if
> that issue presents significant questions of general impact
> or of great public concern.

Dean Witter, 741 F.2d at 360–61 (internal quotations omitted).  Moreover, we have

been more likely to exercise discretionary jurisdiction over an issue not raised in

the district court when, as here, the appeal stems from a summary judgment ruling,

not after trial, because a remand from summary judgment proceedings involves

less strain on judicial resources and does not impair judicial efficiency as

dramatically.  Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,

689 F.2d 982, 990 (11th Cir. 1982).

Blue Martini argues that we should exercise our discretion to hear the case

under the first (pure question of law) and fifth (question of general impact or great

public concern) exceptions of the test.  Turning to the first one, we agree the issue raised is purely a matter of law.  Blue Martini has asked us to examine the constitutionality of § 30.2905.  This is quintessentially a legal question and one for which the factual record is complete.  We turn, then, to whether the failure to consider this pure question of law would result in a miscarriage of justice.

As this Court has previously written, "[a]ny wrong result resting on the erroneous application of legal principles is a miscarriage of justice in some degree."  Roofing & Sheet Metal Servs., 689 F.2d at 990.  We further observed:

> It is not clear precisely how severe a potential miscarriage of justice must be to justify consideration of arguments not raised in the district court. When the Former Fifth Circuit has found the necessary miscarriage of justice lacking, however, it has frequently either expressed the view that the argument raised is weak on its merits or noted that the appellant would have another opportunity to make the argument to the district court.

Id. at 990 n.11.  In a separate case, a panel of this Court opined that "[a] 'miscarriage of justice' is a 'decision or outcome of a legal proceeding that is prejudicial or inconsistent with the substantial rights of a party.'"  Wright v. Hanna Steel Corp., 270 F.3d 1336, 1342 n.8 (11th Cir. 2001) (quoting Black's Law Dictionary) (alterations adopted).  In interpreting this standard, our Court has not been particularly strict in the application of the "miscarriage of justice" requirement.  Thus, in Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp., 677 F.3d 1286, 1292 (11th Cir. 2012), a panel of this Court did not

11

explicitly consider the miscarriage of justice requirement when deciding to hear an issue not raised in the trial court because it presented a pure question of law and an issue of general impact.

Here, Blue Martini would suffer a miscarriage of justice if it were forced to pay over $35,000 in monetary sanctions stemming from the application of an unconstitutional statute, one where the government could not establish so much as a single legitimate interest for the prescription. Indeed, a due process violation yielding a requirement to pay $35,000 would be "inconsistent with the substantial rights of a party." Wright, 270 F.3d at 1342 n.8. Moreover, short of having its appeal heard now, Blue Martini has no realistic option for redress of the district judge's alleged error. Perhaps more significant, however, is the observation that the proper resolution of this matter is as clear as a bell to us. We have no difficulty in concluding that the state statute at issue easily passes rational basis scrutiny. Finally, we are satisfied that the fifth exception also applies -- the issue raised by Blue Martini is a significant one having a general impact. While not, perhaps, of "transcending public importance," In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1301 (11th Cir. 2003), the matter here nonetheless implicates important matters. The constitutional validity of § 30.2905 as interpreted by the district court affects the obligations and rights of many employers -- be they nightclubs, religious organizations, or any others -- in a large metropolitan area that regularly hire

12

moonlighting officers.  Thus, there is an important interest validated by settling the law on the issue now.

## IV.

Turning then to the merits, Blue Martini argues that § 30.2905 violates the 14th Amendment's due process clause because there is no legitimate governmental interest "in shifting liability for the actions of its off-duty police officers exclusively onto the private employer without regard for whether the off-duty officer's actions benefitted the public and were in response to a police matter." The parties (correctly) agree that rational basis review applies to the examination of this statute because it does not discriminate against a protected class, nor does it implicate any fundamental constitutional right.  See Williams v. Pryor, 240 F.3d 944, 947–48 (11th Cir. 2001) (citing, inter alia, Romer v. Evans, 517 U.S. 620, 632 (1996)).

Our courts have explained that "[r]ational basis scrutiny is a highly deferential standard that proscribes only the very outer limits of a legislature's power."  Id. at 948.  On rational basis review, a statute comes to the court bearing "a strong presumption of validity."  F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 314 (1993).  "The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has

13

chosen to achieve it." Leib v. Hillsborough Cty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009). A state is under no obligation to produce evidence supporting the rationality of the legislation and, indeed, the legislature need not even have actually been motivated by the rational reason presented to the court when it enacted the challenged law. Beach Commc'ns, 508 U.S. at 314–15; Leib, 558 F.3d at 1306. Rather, the challenger bears "the burden to negative every conceivable basis which might support [the law]." Beach Commc'ns, 508 U.S. at 315; Williams, 240 F.3d at 948. "Only in an exceptional circumstance will a statute not be rationally related to a legitimate government interest and be found unconstitutional under rational basis scrutiny." Williams, 240 F.3d at 948.

Blue Martini cannot overcome this heavy presumption of statutory validity. There are many legitimate governmental interests served by § 30.2905 -- most related to the idea that the public should not bear the cost of police actions for which a private party has contracted. More specifically, an off-duty officer working a paid private detail is more likely to find himself in a situation where police action is necessary than is an officer who is not working such a detail. Indeed, Blue Martini conceded as much during oral argument. It would not be unreasonable for the legislature to have concluded that without a moonlighting program in place, most -- or at least a significant percentage of -- officers would simply go home after their shifts ended and spend at least a good portion of their

14

time there.  In contrast, law enforcement officers engaged in working a private detail are not going to go home.  Instead, those officers are going to be out in the community in areas where private employers think police presence is likely to be necessary.  It is perfectly reasonable to conclude that officers who are out in the community are more likely to encounter criminal activity demanding police action than officers who stay home.  And it is surely true that the more law enforcement officers engage in police action, the more likely there is to be an incident exposing the responsible parties to possible liability.

As we see it, the Florida legislature could reasonably seek to limit the financial exposure of state and local governments from liability otherwise arising from a moonlighting policy that would increase that exposure.  It is true that a similar result could have been reached by prohibiting moonlighting by police officers altogether, but that would carry with it negative implications for the earning potential of the state's law enforcement personnel.  Where a private party obtains the benefit of additional police protection, the state has a real and substantial financial interest in placing the potential burdens of that service on the private employer as well.  Otherwise, a private employer could profit from contracting for police services while forcing the public treasury to bear the risks that may arise.

The County has posited several other legitimate interests that rationally support the codification of § 30.2905.  In the first place, the statute ensures that counties in Florida have a minimum level of financial protection from officers' off-duty acts, even if those counties did not have the foresight to protect themselves from liability on their own.  Second, the indemnification provision might cause off-duty employers to be more vigilant in their operations, thereby avoiding the incidence of potentially liability-producing police action.  Third, the statute may provide a financial benefit to law enforcement officers by allowing them to take advantage of outside employment opportunities that local governments would not otherwise be able to afford.  Each of these interests is legitimate, and each is rationally served by the statute.  There is more than enough to uphold the constitutionality of § 30.2905.[1]

---

[1] Blue Martini nonetheless argues that the statute should be declared unconstitutional because it "impermissibly shifts the entire legal responsibility for . . . off-duty police officers onto private employers without regard as to whether the off-duty officer was an employee of the private establishment or the municipality when the tortious conduct occurred."  Blue Martini relies extensively -- and exclusively -- on two cases, one decided by a Louisiana intermediate appellate court, Benelli v. City of New Orleans, 478 So. 2d 1370 (La. Ct. App. 1985), and the other by a district court in New Jersey, Bowman v. Twp. of Pennsauken, 709 F. Supp. 1329, 1332–33 (D.N.J. 1989).  Neither case is binding authority, and to the extent either can be read as persuasive, they are distinguishable from this matter.

In Benelli, a private employer was responsible for "all liability for costs which may be incurred for the legal defense of the member employed on the paid detail/outside employment."  Benelli, 478 So. 2d at 1371.  Similarly, in Bowman, the Township's policy made private employers liable "for any acts committed by the 'moonlighting' off-duty Pennsauken police officer in the course of his activities as a 'moonlighting' Pennsauken police officer."  Bowman, 709 F. Supp. at 1350.  In contrast, the statute here addresses only "the acts or omissions of the deputy sheriff while performing services for that employer while off duty."  Fla. Stat. § 30.2905 (emphasis added).  The County's application further provides that "an officer taking police

16

The long and short of it is that Blue Martini's challenge to the constitutionality of Fla. Stat. § 30.2905 fails under rational basis scrutiny. Accordingly, we affirm.

**AFFIRMED.**

---

action outside the purview of the permit, or off the permit holder's premises, will revert to an on-duty status." Thus, while the New Orleans and New Jersey regulations arguably made a private employer liable for any actions an off-duty officer took while moonlighting, the Florida statute at issue here assigns liability to the employer only for actions taken on the employer's behalf. While the government may not have a legitimate interest in shifting liability for all actions undertaken by off-duty officers, it surely has a legitimate interest in shifting liability to the employer for those actions taken to benefit a private employer.

17