[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11436
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-01780-AJB

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff - Appellee,

versus

MICHAEL T. RAND,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 11, 2020)

Before MARTIN, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Michael Rand, the former corporate controller and Chief Financial Officer of Beazer Homes USA, Inc. ("Beazer"), appeals from the district court's grant of summary judgment to the Securities and Exchange Commission ("SEC") as to its claims of (1) securities fraud under § 17(a) of the Securities Act and § 10(b) of the Exchange Act; (2) aiding and abetting Beazer's violations of certain reporting provisions of the federal securities laws, namely § 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13; (3) aiding and abetting Beazer's violations of the books and records and internal control provisions of the federal securities laws, specifically § 13(b)(2)(A), (b)(2)(B), and (b)(5) of the Exchange Act and Rule 13b2-1; and (4) lying to accountants, in violation of Exchange Act Rule 13b2-2. Rand, a federal prisoner, is proceeding pro se in this appeal, as he did before the district court.

Following careful consideration, we affirm the district court.

## I.

In 2009, the SEC filed a civil action against Rand for "fraudulently manipulat[ing] Beazer's reported quarterly and annual income in order to meet or exceed analysts' expectations for Beazer's diluted earnings per share (EPS) and maximized yearly bonuses of certain officers and senior employees." The complaint alleged that Rand caused Beazer to understate its income by around $63 million during fiscal years 2000–2005 and to overstate its income by around $47

2

million during fiscal year 2006 and the first two quarters of fiscal year 2007.  The SEC charged that Rand did this by recording improper reserves and/or liabilities and, in the latter period, improperly recognizing revenue from the sale and leaseback of certain model homes.  The complaint alleged that Beazer's auditor, Deloitte, and internal accountants advised Rand that Beazer could not recognize revenue from those types of transactions.  According to the complaint, Rand responded to the advice by lying to Deloitte and Beazer's internal accountants about the terms of the transactions, directly telling them that Beazer would not have an interest in the leased assets.  The complaint went on to describe how the inaccurate results were included in various Form 10-K's (annual reports), Form 10-Q's (quarterly reports), and Form 8-K's (unscheduled reports of material events) that Beazer filed with the SEC during this period.  On the basis of these allegations, the complaint charged Rand with securities fraud, aiding and abetting reporting violations, aiding and abetting record-keeping violations, and lying to accountants.  The SEC asked the court to permanently enjoin Rand from future violations of the securities provisions; order Rand to disgorge ill-gotten gains with prepetition interest and pay a civil penalty; and bar Rand from serving as an officer or director of a public company.

Rand filed an answer denying the allegations in the complaint.  He asserted various affirmative defenses, including that he acted "in honest and reasonable

3

reliance on the advice and experience of others, including legal professionals, as to matters within the area of their expertise and experience."

In 2010, while discovery in the civil case was ongoing, Rand was indicted by a federal grand jury in the Western District of North Carolina. The indictment charged Rand with criminal offenses arising in part from the accounting fraud scheme alleged in the SEC's civil complaint. The indictment alleged that from 2000 to 2007, Rand directed an accounting fraud conspiracy through both (1) entering into hidden side agreements to recognize revenue from sales of model homes in violation of accounting rules as interpreted by Deloitte, and purposefully hiding those agreements from Deloitte ("the sales-leaseback accounting scheme"), and (2) manipulating land inventory reserves and house costs-to-complete reserves to fraudulently decrease net income and increase expenses ("the cookie jar accounting scheme"). The indictment further alleged various ways Rand attempted to conceal his fraudulent behavior and provided false statements to Deloitte.

The United States government moved to intervene in the civil case and requested a limited stay of discovery during the pendency of the criminal case. Following oral argument, a magistrate judge granted the stay. The parties later jointly moved to stay all discovery through the conclusion of the criminal matter, which the magistrate judge also granted.

4

Rand went to trial in the criminal action and was convicted by a jury on charges of conspiracy, in violation of 18 U.S.C. §§ 371 and 1349, and obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3), (c)(1), and (c)(2). See United States v. Rand, 835 F.3d 451, 456 (4th Cir.), cert. denied, 137 S. Ct. 525 (2016). The jury issued a special verdict finding that Rand participated in a conspiracy to (1) commit securities fraud, (2) make false or misleading statements to auditors and accountants, (3) circumvent Beazer's internal accounting controls, and (4) falsify Beazer's books, records, and accounts. The jury was instructed that for any of these acts to qualify as objects of the conspiracy, they had to find that Rand committed them. Rand's defense at trial was that the accounting treatment was correct, or that, at a minimum, he honestly believed the accounting treatment was correct. The Fourth Circuit affirmed Rand's conviction and the Supreme Court denied his petition for a writ of certiorari.

Once Rand's criminal conviction became final, the SEC moved in June 2017 to reopen the civil case. Discovery resumed. In early 2018, Rand's attorneys moved to withdraw because Rand wished to proceed pro se. The magistrate judge granted the motion.

Following the close of discovery, the SEC moved for summary judgment. The SEC stated that the facts alleged in the civil complaint overlap with the facts actually litigated and decided adversely to Rand in his criminal trial to such an

5

extent that his civil liability was established as a matter of law.  In response, Rand argued he did not have a "full and fair" opportunity to litigate the relevant facts due to a conflict on the part of trial counsel.[1]  He also asserted that the crimes of which he was convicted do not "align" with the allegations in the civil complaint.  The district court applied collateral estoppel, holding that the issues decided in the criminal case were identical to those presented in the civil complaint.  The district court found that Rand had a full and fair opportunity to litigate the issues in his criminal case and that the issues were actually litigated and were a necessary part of his criminal conviction.  As a result, the court granted summary judgment to the SEC.  The court granted all the relief sought by the SEC: it enjoined Rand from future violations of the securities laws; ordered $2,847,725 in disgorgement for ill-gotten gains and $1,103,565.68 in prejudgment interest; imposed an additional $2,847,725 civil monetary penalty; and barred Rand from serving as an officer or director of a public company.

This is Rand's timely appeal.

## II.

Rand asserts two grounds for his appeal.  First, he argues the district court improperly applied the doctrine of collateral estoppel because, broadly speaking,

---

[1] Rand has not presented this argument against collateral estoppel on appeal so we need not address it.  See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam).

the issues decided in his criminal case are not "identical" to those at issue in his civil case. He also argues that the district court erred in its imposition of monetary and civil penalties. Because Rand is proceeding pro se, we construe his pleadings liberally and hold them to a less stringent standard than pleadings drafted by attorneys. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

## A. COLLATERAL ESTOPPEL

### 1. Legal Standard

Collateral estoppel (also known as issue preclusion) prevents relitigation of an issue previously decided in a judicial or administrative proceeding. In re St. Laurent, 991 F.2d 672, 675 (11th Cir. 1993). Not only does collateral estoppel apply across civil matters, but it can also "bar[] a defendant who is convicted in a criminal trial from contesting this conviction in a subsequent civil action with respect to issues necessarily decided in the criminal trial." United States v. Jean-Baptiste, 395 F.3d 1190, 1194 (11th Cir. 2005); see Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568, 71 S. Ct. 408, 414 (1951) ("It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding."). "For collateral estoppel to apply, [1] the issue in question must be 'identical in both the prior and current action,' [2] the issue must have been 'actually litigated' in the criminal trial, [3] the determination of the

7

issue must have been 'critical and necessary to the judgment in the prior action[,]' and [4] the burden of persuasion in the subsequent action cannot be 'significantly heavier.'" Jean-Baptiste, 395 F.3d at 1195 (quoting In re Bilzerian, 153 F.3d 1278, 1281 (11th Cir. 1998) (per curiam)).

When considering what issues were litigated in the criminal trial, we must look at what "was 'distinctly put in issue and directly determined' in the criminal action. When the criminal conviction was based on a jury verdict of guilty, 'issues which were essential to the verdict must be regarded as having been determined by the judgment.'" Wolfson v. Baker, 623 F.2d 1074, 1078 (5th Cir. 1980) (citation omitted) (quoting Emich Motors, 340 U.S. at 569, 71 S. Ct. at 414).[2] In making this determination, the court may "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe v. Swenson, 397 U.S. 436, 444, 90 S. Ct. 1189, 1194 (1970) (quotation marks omitted).

We review de novo a district court's decision to apply collateral estoppel. Quinn v. Monroe County, 330 F.3d 1320, 1328 (11th Cir. 2003). "The district

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Id. at 1209.

court's factual determinations underlying its legal conclusion are upheld unless clearly erroneous." Id.  In addition, we review de novo a district court's grant of summary judgment, drawing all inferences and reviewing all evidence in the light most favorable to the non-moving party.  SEC v. Levin, 849 F.3d 995, 1000 (11th Cir. 2017).

   2.  Application

On appeal, Rand renews his argument that the district court erred when it granted the SEC's summary judgment motion based on collateral estoppel. Specifically, he first argues that, because he was convicted of conspiracy to commit securities fraud and not the substantive offense of securities fraud, collateral estoppel cannot apply to the civil claims alleging securities fraud based on direct liability.  He also argues that materiality and intent, both of which are essential elements of civil securities fraud, were not required to be proven at his criminal trial.  As to the accounting fraud claims, he claims collateral estoppel would be improper because the government did not introduce expert testimony about generally accepted accounting principles ("GAAP") during the criminal trial. He also says the SEC and the government have advanced two different theories of accounting fraud in the civil and criminal cases.  Finally, he argues that collateral estoppel would be inappropriate because the verdict sheet did not indicate whether

9

the jury based its verdict on the cookie jar accounting scheme or the sales-leaseback accounting scheme.

First, we reject Rand's contention that the issues decided in his criminal trial were not, for relevant purposes, identical to those in the civil offenses. Both cases involved exactly the same conduct and series of events. That is: the accounting fraud conspiracy using the cookie jar accounting scheme and the sales-leaseback accounting scheme; Rand's actions attempting to conceal his fraudulent behavior; and his providing false statements to Deloitte. Rand argues that materiality and intent were not at issue in his criminal trial. This is simply not the case. The jury found that Rand committed securities fraud and that he made false or misleading statements to auditors and accountants with scienter and that the misstatements were material. In his criminal trial, Rand did not contest whether he had committed the acts. His defense was that he had done the acts in good faith or in accordance with GAAP. Similarly, Rand's affirmative defense to the civil action is that he acted in good faith and based on reasonable reliance. The fact that, as Rand argues, the SEC and the government had slightly different theories supporting his earnings manipulation scheme is not enough to make the issue distinct. Rand does not point us to "one material differentiating fact" that shows civil liability does not necessarily follow from the jury verdict and the facts

10

presented at his criminal trial.  See CSX Transp., Inc. v. Bhd. of Maint. of Way

Emps., 327 F.3d 1309, 1317 (11th Cir. 2003).

Second, we conclude that the relevant issues in the civil case were actually

litigated at the criminal trial.  See Pleming v. Universal-Rundle Corp., 142 F.3d

1354, 1359–60 (11th Cir. 1998) (looking to the trial record to determine if an issue

was actually litigated).  The government presented evidence to establish intent.

Rand centered his defense around good faith during the trial.  The jury was

specifically instructed about the standard and implications of the good faith

defense and convicted him.  See Br. of Appellee at 16–22.  Rand argues there is a

meaningful difference between his civil charges of fraud and his criminal

conviction of conspiracy to commit fraud.  We think not.  As we have discussed,

the relevant issues in the criminal and civil actions are identical and the jury's

special verdict found that Rand committed the substantive crime of securities

fraud.  And in any event, Rand did not appear to dispute this element of collateral

estoppel before the district court.

As to the third element, the issue of Rand's good faith and intent was

necessarily decided when the jury convicted him.  In checking the box on the jury

verdict form beside each of the four objects of the conspiracy, the jury rejected

Rand's good faith defense.  They found him guilty of all four objects of the

conspiracy—securities fraud, circumventing Beazer's accounting controls, lying to

11

Beazer's auditors, and falsifying Beazer's books and records.  Adjudication of those issues precludes Rand from relitigating the question of whether he acted in good faith.

Finally, Rand had the full and fair opportunity to litigate the issue of his good faith during the criminal trial.  And he did litigate this issue.  He argued his good faith defense to the jury, which allowed him to present the potential factual basis for the jury to conclude that he was acting in good faith.  On appeal, Rand attempts to relitigate the factual and legal basis of the issues decided at his criminal trial by challenging the sufficiency of the evidence against him and the jury instructions.  These issues cannot be relitigated in this proceeding.  Since the burden at trial was on the government to prove beyond a reasonable doubt that Rand acted with the intent to defraud and not in good faith, the relative burdens of persuasion offer no aid to Rand on this point.

All elements of collateral estoppel were met.  The district court therefore properly barred Rand from relitigating the issue of his intent or good faith.

B. CIVIL AND MONETARY PENALTIES

Rand also challenges the district court's imposition of $6,799,108 in civil fines, penalties, and prejudgment interest.  We review an order of disgorgement for abuse of discretion.  See SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004) (per curiam).  In order to show it is entitled to disgorgement, the SEC need only make

12

"a reasonable approximation of a defendant's ill-gotten gains." Id. The SEC argues we cannot reach this ground for appeal because Rand made no such objection in response to the SEC's motion for summary judgment. The SEC is right.

"As a general matter, issues not raised in the district court and raised for the first time in an appeal will not be considered by this Court." Taylor v. Mentor Worldwide LLC, 940 F.3d 582, 588 (11th Cir. 2019) (alteration adopted and quotation marks omitted). However, "a circuit court's power to entertain an argument raised for the first time on appeal is not a jurisdictional one; thus we may choose to hear the argument under special circumstances." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1332 (11th Cir. 2004). While we liberally construe pro se pleadings, issues not raised below by a party proceeding pro se are normally deemed waived. See Ramirez v. Sec'y, U.S. Dep't of Transp., 686 F.3d 1239, 1250 (11th Cir. 2012). We permit issues to be raised for the first time on appeal under five circumstances:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below where the proper resolution is beyond any doubt. Finally, it may be appropriate

13

to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

Access Now, 385 F.3d at 1332 (alteration adopted) (quoting Wright v. Hanna Steel Corp., 270 F.3d 1336, 1342 (11th Cir. 2001)).

Rand claims the first and third exceptions apply here.  Rand himself argues resolution of the questions of fines, penalties, and prejudgment interest require the court to examine both parties' methods of accounting as well as the "egregiousness" of Rand's conduct.  Thus, this is hardly a pure question of law. See SEC v. AMX, Int'l, Inc., 7 F.3d 71, 73 (5th Cir. 1993) (per curiam) (reviewing de novo legal question of standard used for disgorgement order, as opposed to the abuse-of-discretion review proper for factual considerations of disgorgement). Furthermore, Rand has not shown how failure to consider his arguments would result in a miscarriage of justice or impair the interests of justice.  Rand had an opportunity to object to the SEC's arguments regarding his civil penalties and disgorgement here, and he did not do so.  Cf. Ramirez, 686 F.3d at 1250 (holding that pro se plaintiff did not waive argument that he made several times before the district court "merely because he failed to orally re-contest the issue" once at trial). And in any event, it is not at all obvious that Rand has an argument that promotes a better result than that reached by the district court here.  Cf. Blue Martini Kendall, LLC v. Miami Dade County, 816 F.3d 1343, 1350 (11th Cir. 2016) (holding that

14

party did not waive argument because, "more significant[ly]," the "proper resolution" of the matter was "clear as a bell").

Rand failed to contest the issue of the monetary relief granted to the SEC before the district court. Thus, the issue of whether the district court abused its discretion in that regard is waived.

### III.

For the foregoing reasons, the district court is **AFFIRMED**.