[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-11104

Non-Argument Calendar

_____

LOUIS MATTHEW CLEMENTS,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:22-cv-00190-MAP

_____

Before ROSENBAUM, GRANT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Louis Clements, proceeding *pro se*, appeals the lower court's order affirming the decision of the Commissioner of the Social Security Administration ("the Commissioner") to deny his application for disability benefits pursuant to 42 U.S.C. § 1383(c)(3). After careful review, we affirm.

## BACKGROUND

Plaintiff applied to the Social Security Administration ("SSA") for disability benefits in June 2019. In his application, Plaintiff claimed he suffered from a disability that commenced in June 2008 related to compressed and herniated discs, irritable bowel disease with diarrhea ("IBS-D"), post-traumatic stress disorder ("PTSD"), depression, anxiety, and sporadic pericarditis linked to his IBS-D episodes. According to Plaintiff, these conditions significantly limited his ability to work.

Plaintiff was 50 years old when he filed his application for disability benefits. Previously, Plaintiff had earned a Bachelor of Fine Arts degree and worked for eight years waiting tables and teaching tennis in New York City while trying to become an actor. Plaintiff was arrested in 2008 for lewd and lascivious conduct with a 13-year-old child and terminated from his teaching job. He reported to a consulting psychologist that his PTSD was related to the stigma associated with this incident and that his symptoms included nightmares, depression, hypervigilance, and difficulty

addressing others.  As to his other conditions, Plaintiff claimed that his IBS-D caused abdominal pain and cramping and required that he have constant access to a bathroom, and that pain and numbness in his arms due to his spinal impairments interfered with his former work of writing screen plays because it prevented him from sitting and typing for more than fifteen minutes.

The Commissioner denied Plaintiff's application for benefits, and an ALJ held a hearing to review the Commissioner's decision.  Plaintiff, who was represented by counsel at the time, appeared at the hearing and provided testimony and documentary evidence in support of his claim.  In addition to Plaintiff's testimony and evidentiary submissions, the ALJ considered evidence from medical consultants who examined Plaintiff, the testimony of a vocational expert, and other evidence in the record such as medical records from Plaintiff's primary care physician and his reported activities of daily living.  Based on all the evidence presented at the hearing, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and thus affirmed the Commissioner's decision to deny disability benefits.

Specifically, the ALJ applied the five-step sequential evaluation process that determines whether an applicant is disabled, and concluded at the first and second step that Plaintiff was not currently engaged in substantial gainful activity and that he had severe impairments related to his degenerative disc disease, IBS-D, and mental health issues.  *See* 20 C.F.R. § 416.920(a)(4)(i) and (ii).  Nevertheless, the ALJ concluded at step three of the analysis that

Plaintiff's impairments did not meet or equal an impairment listed in the SSA regulations ("a listing"), which listing describes impairments that are considered severe enough to prevent an applicant from doing any gainful activity such that they give rise to a presumption of disability.[1]  *See id.* § 416.920(a)(4)(iii).  Considering each of Plaintiff's impairments that potentially could meet a listing, the ALJ reasoned that none of them qualified because:  (1) Plaintiff's disc disease did not require the use of an assistive device, he demonstrated normal gait and strength, and he reported regularly shopping, driving, and volunteering at his mother's office, (2) there was no evidence of hospitalizations or findings such as an obstruction, anemia, involuntary weight loss, or the need for supplemental nutrition related to his IBS-D, and (3) Plaintiff's recent psychological evaluation and reported daily activities indicated mostly mild, and in some limited areas mild to moderate, rather than severe mental impairments.

Having concluded that Plaintiff's impairments did not meet a listing, the ALJ proceeded to steps four and five of the analysis. Per the governing regulations, the ALJ first determined Plaintiff's residual functional capacity ("RFC")—that is, his ability to do physical and mental work activities despite his impairments.  *See id.*

---

[1]  To meet or equal a listed impairment, a claimant must have a diagnosis included in one of the listings and must provide medical documentation that his condition satisfies specific criteria associated with the diagnosis.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  Assuming this requirement is met, it will be concluded that the claimant is disabled.  *See* 20 C.F.R. § 416.920(a)(4)(iii).

§ 416.920(a)(4)(iv).  Based on all the evidence in the record, and accounting for Plaintiff's disc disease, IBS-D, and various mental health issues, the ALJ concluded that Plaintiff had the RFC to:

> Lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, and crouching; no crawling, frequent overhead reaching; frequent handling and fingering; no exposure to hazardous machinery or unprotected heights; permitted one additional bathroom break not to exceed five minutes both before and after the meal break in addition to regular scheduled breaks; low stress work defined as only occasional decision-making and only occasional changes in the work setting; frequent interaction with coworkers and supervisors; and occasional interaction with the public.

After crafting the above RFC, the ALJ determined at step four of the analysis that Plaintiff had no past relevant work and no transferable job skills. *See id.*  The ALJ thus continued to step five of the analysis, considering whether Plaintiff could "make an adjustment to other work" given his RFC, age, education, and work experience.  *See id.* § 416.920(a)(4)(v).  The ALJ concluded Plaintiff could make such an adjustment here, based on the testimony of a

6                    Opinion of the Court                    23-11104

vocational expert who opined that an individual of Plaintiff's age, education, work experience, and specific limitations as indicated in his RFC would be able to perform jobs such as a checker, a marker, and a router, which jobs exist in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled.

Plaintiff filed a complaint with the SSA Appeals Council, arguing that the ALJ was biased against him and conducted the hearing in an adversarial manner, and that the ALJ otherwise abused his discretion by downplaying the severity of his PTSD and IBS-D symptoms and insinuating that he could perform certain hypothetical jobs wearing an "adult diaper." In his complaint to the Appeals Council, Plaintiff emphasized the debilitating symptoms of his IBS-D and how infeasible it would be for him to function in a work setting, even if allowed extra bathroom breaks or while wearing an adult diaper. The Appeals Council rejected Plaintiff's arguments and denied his request for the Council to review the ALJ's decision.

Plaintiff subsequently filed a *pro se* complaint in the district court challenging the ALJ's denial of his application for disability benefits.[2] In his complaint, Plaintiff argued that the ALJ's RFC determination conflicted with the record evidence concerning Plaintiff's PTSD, cervical and lumbar stenosis causing incontinence, and IBS-D that caused him to spend most of the day on the toilet. Plaintiff also argued that the ALJ showed bias against him at various

---

[2] Plaintiff's counsel who represented him at the hearing withdrew from the case after the Appeals Council declined to review the ALJ's decision.

points in the hearing, including when he asked whether Plaintiff could work wearing an "adult diaper." Plaintiff cited numerous other errors allegedly committed by the ALJ, including failing to account for his IBS-D-related abdominal pain and cramping that limited his ability to focus, work at an acceptable pace, and reliably attend work. Important for purposes of this appeal, Plaintiff did not challenge the ALJ's determination that Plaintiff's impairments did not meet or equal a listing in the relevant SSA regulations.

The parties consented to have the case decided by a magistrate judge, who affirmed the ALJ's decision to deny Plaintiff's application. As relevant here, the magistrate judge determined that the ALJ gave adequate consideration to Plaintiff's subjective complaints about his symptoms and did not err by finding that those complaints were not entirely consistent with the other evidence in the record, including Plaintiff's minimal treatment history for IBS-D, a psychological evaluation in March 2020 indicating that Plaintiff's mental impairments were mild to moderate rather than severe, and Plaintiff's reported activities of daily living. Given this evidence, the magistrate judge concluded that the RFC crafted by the ALJ—and more generally, the ALJ's conclusion that Plaintiff could perform light, low stress work if given extra bathroom breaks and other restrictions to address his spinal impairments and mental health issues—complied with governing legal standards and was supported by substantial evidence.

This appeal followed. In his appellate brief, Plaintiff first suggests that this Court should consider new evidence previously

unavailable to him, including medical records documenting visits Plaintiff has had with his primary care physician since January 2023, a recent echocardiogram, and a cervical spine MRI conducted in May 2023. Also in the new evidence category, Plaintiff submits a statement from his primary care physician Dr. Sebastian Draulans, dated May 2023, which describes the difficulty Plaintiff would have functioning in a work setting given the unpredictability of his IBS-D symptoms. As to the alleged errors below, Plaintiff argues for the first time on appeal that the ALJ improperly minimized his spinal impairments when he concluded they did not meet a listing. Plaintiff also argues that (1) the ALJ erred when he concluded that Plaintiff could work with extra bathroom breaks despite his severe IBS-D symptoms, and (2) the ALJ was biased against him, as evidenced by his "adult diaper" comment.

## DISCUSSION

### I.    Standard of Review

In a social security disability case in which the Appeals Council has denied review, this Court reviews the ALJ's decision as the final decision of the Commissioner.[3] *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021). The scope of our review is limited to "whether substantial evidence supports the decision and whether the correct legal standards were applied." *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021).

---

[3] We review *de novo* the judgment of the district court affirming the Commissioner's decision, applying the same standard as the district court. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Assuming these requirements are met, we may not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the ALJ." *Viverette*, 13 F.4th at 1314 (alteration adopted and quotation marks omitted).

Substantial evidence is "more than a scintilla" but less than a preponderance. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021) (quotation marks omitted). It is, in essence, "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). As the Supreme Court has explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Furthermore, the substantial evidence standard requires us to defer to the ALJ's factual findings, albeit we give no such deference to, and review *de novo*, his legal conclusions. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## II.    Analysis

A claimant is eligible for disability benefits only if he can show he is disabled, which the Act defines to mean:

> [unable] to engage in any substantial gainful activity
> by reason of any medically determinable physical or
> mental impairment which can be expected to result
> in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A). Pursuant to the Act, the claimant has the burden of proving that he satisfies this definition. *Id.* § 423(d)(5)(A).

*See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("An individual claiming Social Security disability benefits must prove that [he] is disabled.").

As noted, the SSA regulations require the ALJ to apply a five-step sequential analysis to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920(a).  In the first and second steps, the ALJ considers whether the claimant currently is engaged in substantial gainful activity and whether he has an impairment that is severe in that it significantly limits his ability to perform basic work activities.  *See id.* § 416.920(a)(4)(i) and (ii).  If the claimant is engaged in substantial gainful activity or if he does not have a severe impairment, the inquiry ends and the ALJ issues a finding of no disability.  *See id.*  Otherwise, the ALJ proceeds to step three and considers whether the impairment meets or equals the severity of a listed impairment, in which case the claimant is presumed to be disabled.  *See id.* § 416.920(a)(4)(iii).

If the claimant is not engaged in substantial gainful activity and he has an impairment that is severe but that does not meet a listing, the ALJ continues to the last two steps of the analysis.  *See id.* § 416.920(a)(4)(iv) and (v).  At this stage of the analysis, the ALJ must first determine the claimant's RFC.  *See id.*  The ALJ then considers at step four whether, given the claimant's RFC, he can perform his past relevant work.  *See* 20 CFR § 416.920(a)(4)(iv).  If so, the claimant is not disabled and the analysis ends.  *See id.*  If not, the ALJ considers at the fifth and last step whether the claimant, given his RFC, age, education, and work experience, can "make an

adjustment" to other work. *Id.* § 416.920(a)(4)(v). Only if the claimant cannot adjust to other work will he be found disabled. *Id.*

Again, after applying the analysis set out above, the ALJ ultimately determined at step five that Plaintiff was not disabled because his RFC enabled him to perform work available in significant numbers in the national economy despite his impairments. Plaintiff urges this Court to revisit the ALJ's RFC determination based on new evidence, including imaging results and records of doctor visits in January and May 2023 and an expert witness's statement obtained in May 2023 concerning the severity and unpredictability of his IBS-D symptoms. In addition, Plaintiff argues the ALJ's decision denying his application for benefits is flawed because the ALJ did not correctly assess the evidence presented at the hearing concerning the severity of Plaintiff's spinal impairments and IBS-D symptoms. As to his spinal impairments specifically, Plaintiff argues for the first time on appeal that the ALJ erred when he determined those impairments did not meet a listing in the SSA regulations. Finally, Plaintiff claims he is entitled to a new hearing with a different ALJ because the ALJ who heard his case was biased against him, as evidenced by the "adult diaper" comment made during the hearing.

As discussed more fully below, we are unpersuaded by Plaintiff's arguments.

1.    <u>New Evidence</u>

As an initial matter, we will not consider the new evidence cited in Plaintiff's appellate brief that purportedly supports his

current disability.  *See Wilson v. Apfel*, 179 F.3d 1276, 1278–79 (11th Cir. 1999) (declining to consider evidence obtained after the district court's decision affirming the claimant's denial of benefits).  As this Court explained in *Wilson*, "[w]e review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision."  *Id.* at 1279 (footnote omitted).  Accordingly, medical evidence obtained after the date of the ALJ's decision indicating, for example, that the claimant's condition has deteriorated, "is irrelevant."  *Id.*  The new evidence proffered by Plaintiff on appeal, dated January and May 2023, post-dates the ALJ's decision denying benefits by nearly two years.

In support of his request for the Court to accept the new evidence, Plaintiff cites a provision of the Act that allows the <u>district court</u> to remand a case to the Commissioner to consider new, non-cumulative, and material evidence, if a claimant can show "good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *See* 42 U.S.C. § 405(g) (setting out the requirements applicable to a "sentence six" remand from the district court to the Commissioner based on new evidence).  This provision does not apply to new evidence presented for the first time on appeal to this Court.[4]  *See Wilson*, 179 F.3d at 1278 n.3

---

[4] Plaintiff invoked this provision when he filed a motion for the district court to remand the case to the Commissioner based on a different set of new evidence.  The district court denied the motion, and Plaintiff did not challenge that denial on appeal. Plaintiff has thus abandoned any issue as to the new evidence he attempted to submit in the district court.  *See United States v.*

(distinguishing between new evidence presented to the district court in support of a motion for a sentence six remand and evidence presented for the first time on appeal to this Court). *See also Ingram*, 496 F.3d at 1268 (noting that "a reviewing court is limited to the certified administrative record in examining the evidence" (citation and quotation marks omitted)). Thus, we do not consider the new evidence cited in Plaintiff's appellate brief in deciding this appeal.

2.    The Severity of Plaintiff's Spinal Impairments

Nor do we consider Plaintiff's argument, raised for the first time on appeal, that the ALJ erred by mischaracterizing his spinal injuries as "degenerative disc disease." Plaintiff claims this characterization is incorrect because imaging shows there are "bulges and [s]tenosis" in all three areas of his back, cervical thoracic, and lumbar. As such, Plaintiff argues, the ALJ incorrectly found at step three of the analysis that his spinal impairments did not meet or equal an impairment listed in the relevant SSA regulations.

As noted, Plaintiff did not raise this argument, or otherwise challenge the ALJ's determination that his spinal impairment did not meet the severity of a listed impairment, in the district court. "This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be

---

*Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (clarifying that issues not raised in an initial brief on appeal are treated as forfeited, and addressed by the Court only in "extraordinary circumstances" not present here).

considered." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks omitted). *See also Blue Martini Kendall, LLC v. Miami Dade Cnty.*, 816 F.3d 1343, 1349 (11th Cir. 2016) ("As a general rule, an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." (quotation marks omitted)). "This rule . . . is not jurisdictional and may be waived by this [C]ourt in certain exceptional circumstances." *Id.* (quotation marks omitted). But no such exceptional circumstances exist here. Accordingly, we do not address the merits of Plaintiff's argument that his spinal impairments satisfy a listing.

### 3.    Plaintiff's Ability to Work Despite His IBS-D Symptoms

Plaintiff's argument that the ALJ erred by concluding he had the RFC to perform work that exists in significant numbers in the national economy—and thus, that he is not disabled—is properly before the Court, but we are not persuaded by it. To summarize the challenged finding, the ALJ determined that Plaintiff could perform light work with: (1) lifting, postural, and movement restrictions to address his spinal impairments, (2) stress, decision-making, and interaction restrictions to account for his mental health issues, and (3) two extra five-minute bathroom breaks, one before and one after the regularly scheduled thirty-minute meal break, in addition to the other regularly scheduled breaks workers typically have during a shift, to accommodate his IBS-D symptoms. The ALJ then concluded, based on the testimony of a vocational

expert, that there are significant numbers of jobs within those restrictions in the national economy, including the jobs of a clerical checker, a router, and a marker.

Plaintiff does not challenge the vocational expert's testimony that there are significant numbers of jobs in the national economy within the parameters of the RFC. Nor does he take issue with the restrictions the ALJ included in the RFC related to his spinal impairments or mental health issues. Instead, Plaintiff's argument on appeal relates solely to the restrictions in the RFC intended to address his IBS-D symptoms. Specifically, Plaintiff argues that the ALJ relied on "razor thin" evidence to conclude he could work an eight-hour shift so long as he was provided two extra bathroom breaks in addition to the regularly scheduled longer meal break and other, shorter breaks during the shift. According to Plaintiff, this conclusion ignores his testimony and the preponderance of the evidence in the record concerning his IBS-D symptoms.

We disagree. It is true that Plaintiff claimed his IBS-D required him to use the bathroom more than indicated in the RFC, but contrary to Plaintiff's argument, the ALJ did not ignore Plaintiff's testimony concerning his IBS-D symptoms. Instead, and as required by the governing regulations, the ALJ considered Plaintiff's testimony about his symptoms but also considered whether that testimony was consistent with the objective medical evidence and other evidence in the record. *See* 20 C.F.R. § 416.929. Ultimately, the ALJ determined Plaintiff's testimony was not entirely consistent with such evidence because: (1) there were minimal

treatment records[5] concerning Plaintiff's IBS-D, (2) one of the few records relevant to Plaintiff's IBS-D indicated that Plaintiff reported to a consulting internal medicine physician, Dr. Michael Rosenberg, in March 2020 that his symptoms had improved due to diet changes and that he was only having diarrhea two or three times a day, and (3) Plaintiff's reported activities of daily living, which included volunteering at his mother's office for several hours a day, shopping, and driving, among other things, suggested Plaintiff's IBS-D symptoms were less severe than he testified.

Based on our independent review of the record, the ALJ's conclusion that Plaintiff could work with two extra bathroom breaks, in addition to the meal break and other regularly scheduled breaks a worker typically has during an eight-hour shift, is supported by substantial evidence, including the evidence cited by the ALJ in his decision. Furthermore, the conclusion complies with the governing legal standards, which require an ALJ to consider "all relevant medical and other evidence" in the record when determining a claimant's RFC. *See Buckwalter*, 5 F.4th at 1320. Such relevant evidence includes all the sources relied upon by the ALJ here: Plaintiff's testimony and statements about his symptoms, his medical records and laboratory results, information provided by other sources about his symptoms and functional limitations, and his

---

[5] Plaintiff reported to his general practitioner Dr. Draulans in November 2020, after he filed his application for disability benefits, that "frequent loose stools throughout the day prevent[ed] him from meaningful employment." However, Plaintiff confirmed during the hearing that he had not seen a gastrointestinal specialist for his IBS-D.

reported activities of daily living. *See* 20 C.F.R. § 416.929. To the extent the ALJ discounted Plaintiff's testimony concerning his subjective symptoms of IBS-D, he adequately explained his rationale and supported it by citing relevant evidence from the record. *See Buckwalter*, 5 F.4th at 1321 (quotation marks omitted) (noting that the ALJ must explain in his RFC finding "the weight given to different medical opinions and the reasons therefor").

In short, there is no basis upon which to overturn the ALJ's decision that Plaintiff was not disabled during the relevant time frame because he could perform work that exists in significant numbers in the national economy given his RFC and other relevant factors. To reach that decision, the ALJ correctly applied the five-step sequential analysis, crafted an RFC at the fourth step of the analysis that is supported by substantial evidence in the record, and properly relied on the testimony of a vocational expert to determine at the fifth step that Plaintiff, despite his limitations, could perform work that exists in significant numbers in the national economy. Because it complies with the governing legal standards and is supported by substantial evidence, the ALJ's decision must be affirmed. *See Walker*, 987 F.3d at 1338.

### 4.   Bias Against Plaintiff

Finally, Plaintiff argues that he is entitled to a new hearing before a different ALJ because the ALJ who heard his case was biased against him. Specifically, Plaintiff argues the ALJ conducted his hearing in an "aggressive, adversarial, close minded, mocking

manner by insulting and humiliating Plaintiff."   In support of this argument, Plaintiff again cites the ALJ's "adult diaper" comment.

A disability claimant is entitled to a "full and fair" hearing before an impartial ALJ.  *See Miles v. Chater*, 84 F.3d 1397, 1400–01 (11th Cir. 1996) (noting that the ALJ's impartiality is "integral to the integrity of the system").  However, there is a presumption that judicial officers and quasi-judicial officers such as ALJs are unbiased.  *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  The presumption can be rebutted by a showing of a conflict of interest "or some other specific reason for disqualification."  *Id.* (footnote omitted).  "But the burden of establishing a disqualifying interest rests on the party making the assertion."  *Id.* at 196.  Vague and unsupported assertions of general bias are insufficient.  *See id.*

Plaintiff does not come close to making the required showing here.  As an initial matter, Plaintiff's conclusory assertion that the ALJ was "aggressive, adversarial, [and] close-minded" is not supported by any citation to the record or by our independent review of the transcript of Plaintiff's hearing before the ALJ.  Indeed, there is no indication in the transcript of bias against Plaintiff on the part of the ALJ.  On the contrary, the ALJ's line of questioning as reflected in the transcript is entirely respectful and professional and the ALJ concluded the hearing by wishing Plaintiff well and thanking him for his testimony, which he said he "greatly appreciate[d]."

The only specific support Plaintiff provides for his bias argument is the ALJ's "adult diaper" comment.  The comment Plaintiff is referring to was made by the ALJ while questioning Plaintiff

about the severity of his IBS-D symptoms.  What the ALJ asked, precisely, was whether Plaintiff's IBS-D was severe enough to require that he "wear adult undergarments."  The question was not gratuitous but relevant to the topic at hand—that is, the severity of Plaintiff's chief complaint related to his IBS-D and whether his need to use the bathroom was as uncontrollable as Plaintiff suggested in his testimony—and it was not made in an insulting way, as Plaintiff claims.  Indeed, the ALJ stated that he did not "mean to embarrass" Plaintiff, but that he needed to ask the question to determine the severity of his gastrointestinal issues.  Accordingly, Plaintiff has not established bias against him sufficient to warrant reversal or a new hearing before a different ALJ.

5.     Other Reasons to Reverse

We note that Plaintiff provides a cursory list in his appellate brief of "other reasons" to reverse the ALJ's determination, including COVID-related stress and the ALJ's misapprehension of his fear of vigilantes due to his sex offender status, among other things.  Beyond simply listing these issues, Plaintiff does not offer any reasoning or evidentiary support as to why they warrant reversal of the ALJ's determination.  Nevertheless, Plaintiff urges the Court consider these arguments and any others he has overlooked on appeal due to his *pro se* status.

As a *pro se* litigant, Plaintiff's pleadings "are held to a less stringent standard than pleadings drafted by [an] attorney[] and will, therefore, be liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  But this leniency does

not give a court "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Iqbal*, 556 U.S. 662 (2009). Quite simply, Plaintiff's list of "other issues" does not set forth any ground that warrants reversal of the ALJ's finding of no disability. Accordingly, we do not consider the issues further.

## CONCLUSION

For all the above reasons, we affirm the Commissioner's denial of Plaintiff's application for disability insurance benefits.

**AFFIRMED.**